FILED
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**September 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CRISTINA RANGEL-FUENTES,

     Petitioner,

v.

PAMELA J. BONDI, United States
Attorney General,

     Respondent.

No. 23-9511

_____

**Petition for Review from the**
**Board of Immigration Appeals**
_____

Brian M. Lipshutz and Matteo Godi of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, D.C. (Kannon K. Shanmugam and Jennifer K. Corcoran of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, D.C.; Matthew M. Higgins and Kristen Marino of Paul, Weiss, Rifkin, Wharton & Garrison LLP, New York, New York; Sandra Saltrese-Miller of The Saltrese Law Firm, Boulder, Colorado, with them on the briefs), for Petitioner.

Greg D. Mack and Corey L. Farrell, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Department of Justice (Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division; Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, with Greg D. Mack on the briefs), Washington, D.C., for Respondent.

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

Cristina Rangel-Fuentes petitions for review of a final order of removal denying her applications for cancellation of removal and asylum.

The Board of Immigration Appeals (BIA) found Rangel ineligible for cancellation of removal because at the time the immigration judge denied her application, her son was 22 and no longer qualified as a child, so Rangel could not show hardship to a qualifying child under the age of 21. Rangel contends that was error. She argues that under 8 U.S.C. § 1229b(b)(1)(D), a qualifying child's age should be fixed no later than the date the administrative record closed, when her son was 20 years old. But we read 8 U.S.C. § 1229b(b)(1)(D) differently. Because the statute focuses on the harm a qualifying child would suffer if an applicant were removed, it authorizes immigration judges to evaluate the relevant facts, including the age of the applicant's child, when they decide whether to order removal or grant relief. That is what the immigration judge did here, so we deny Rangel's petition for review as to cancellation of removal.

However, we agree that the BIA abused its discretion by treating Rangel's asylum appeal as waived. We therefore grant the petition for review in part and remand for the BIA to address the merits of Rangel's asylum appeal.

## Background

Rangel is a 49-year-old citizen of Mexico. She most recently entered the United States in 1995 or 1996 without inspection and has remained here ever since. While in the United States, Rangel married and had three children, the youngest of whom, Fernando, was born on September 7, 1997.

2

The Department of Homeland Security charged Rangel with inadmissibility in early 2012, after state law enforcement arrested her for contempt of court following her failure to appear when a gym sued her over unpaid membership dues. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Rangel conceded her inadmissibility, but she applied in 2014 for cancellation of her removal. In support, she argued that "removal would result in exceptional and extremely unusual hardship to [her] . . . child," her youngest son Fernando, who was 17 at the time. 8 U.S.C. § 1229b(b)(1)(D).

Later, in July 2017, Rangel filed an application for asylum in which she described two recent incidences of violence against her family members in Mexico: in late 2016, her female cousin had been murdered and her uncle had been kidnapped. Even though Rangel did not apply for asylum within one year of her arrival in the United States, she invoked the statutory exception for "changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D).

At her July 2017 evidentiary hearing before the immigration judge, Rangel testified that when her removal proceedings commenced, Fernando began suffering from depression, which affected his appetite and sleep, led him to stop participating in sports, and caused his grades to drop. Rangel worried that if she were deported to Mexico, Fernando might try to take his own life. She also introduced a report from a clinical psychologist opining that Fernando could very likely experience a recurrence of depression upon Rangel's deportation.

Additionally, Rangel discussed her fears of experiencing violence in Mexico. She said that her brother, a car mechanic, was forced to repair the cars of individuals

involved in organized crime. She also recounted how her cousin, who lived in Texas, had been stabbed to death while visiting Juarez in 2016, and how her uncle had been kidnapped in 2016 and was never seen again. Rangel felt that because she had spent so much time in the United States, people in Mexico would assume she had money and target her for kidnapping. She also introduced a letter from a municipal official in her hometown in Mexico describing the high safety risk Rangel and her family would face upon return.

The immigration judge declared the record closed in September 2017, when Fernando was twenty years old and thus a "child" for the purposes of cancellation of removal. *See* 8 U.S.C. § 1101(b)(1) (defining "child," as relevant here, to mean "an unmarried person under [21] years of age"). However, due to the yearly statutory cap on the number of cancellations of removal the Attorney General may grant and an accompanying regulation that directs judges to reserve cancellation rulings after the cap has been reached, the immigration judge did not issue a written opinion until September 2019. *See* 8 U.S.C. § 1229b(e)(1) (providing that "the Attorney General may not cancel the removal and adjust the status under this section . . . of a total of more than 4,000 aliens in any fiscal year"); 8 C.F.R. § 1240.21(c)(1) (explaining that "[w]hen grants are no longer available in a fiscal year, further decisions to grant such relief must be reserved until such time as a grant becomes available under the annual limitation in a subsequent fiscal year").

In issuing that opinion, the immigration judge concluded that Rangel was statutorily ineligible for cancellation of removal because Fernando no longer

qualified as a child under the cancellation-of-removal statute. The immigration judge also denied Rangel's asylum application, ruling that Rangel waited too long to apply for asylum upon learning of her cousin's murder and that she could not show a well-founded fear of future persecution on account of her membership in a particular social group.

Rangel then appealed to the BIA, which rejected Rangel's argument that the immigration judge was required to fix Fernando's age at the time of the evidentiary hearing. The BIA also determined that Rangel had waived her argument with respect to the immigration judge's denial of her asylum application.[1]

Rangel then filed this petition for review.[2] We initially decided this case under the *Chevron* deference framework. *See Rangel-Fuentes v. Garland*, 99 F.4th 1191 (10th Cir. 2024) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). Then, while Rangel's petition for rehearing was pending, the Supreme Court overruled *Chevron*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). We accordingly vacated our decision, granted panel rehearing, and ordered supplemental briefing and argument to address *Loper Bright*'s impact.

---

[1] Additionally, the BIA concluded that Rangel waived any challenge to the immigration judge's ruling denying relief under the Convention Against Torture. Rangel does not challenge that ruling here.

[2] Our jurisdiction over these issues arises under 8 U.S.C. § 1252(a)(2)(D) and (b)(4)(D). The former permits us to review questions of law concerning the cancellation of removal (as opposed to the discretionary denial of cancellation of removal, which 8 U.S.C. § 1252(a)(2)(B)(i) prohibits us from reviewing). *See Patel v. Garland*, 596 U.S. 328, 331 (2022). And the latter permits us to vacate a removal order denying an asylum application if it is "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

*See Rangel-Fuentes v. Garland*, No. 23-9511, 2024 WL 3405079 (10th Cir. July 10, 2024) (unpublished).

## Analysis

### I.    Cancellation of Removal

Rangel challenges the BIA's interpretation of 8 U.S.C. § 1229b(b)(1)(D). That provision requires an applicant seeking cancellation of removal to "establish[] that removal would result in . . . hardship" to a qualifying relative, such as a U.S. citizen child under the age of 21. *Id.*; *see also* 8 U.S.C. § 1101(b)(1).

As we've previously acknowledged, this provision doesn't explicitly indicate when a qualifying child's age should be evaluated. *See Martinez-Perez v. Barr*, 947 F.3d 1273, 1280 (10th Cir. 2020). And the timing matters because Congress capped cancellations at 4,000 per year. *See* 8 U.S.C. § 1229b(e)(1). Once the national cap is reached, immigration judges reserve decisions on applications they intend to grant until openings become available. *See* 8 C.F.R. § 1240.21(c)(1). So while an applicant waits for a decision, the applicant's child may turn 21. *See* Procedures Further Implementing the Annual Limitation on Suspension of Deportation and Cancellation of Removal, 82 Fed. Reg. 57336, 57337 (Dec. 5, 2017) (acknowledging that qualifying child may age out while a decision is reserved pending available removal spots). Immigration judges are then forced to choose between denying an application due to delay that is outside the applicant's control or granting an application for which the applicant is no longer eligible.

The BIA's guidance on this issue—both in its decision in this case and in prior

6

ones—endorses assessing a child's age at the time a decision is issued. *See Isidro-Zamorano*, 25 I. & N. Dec. 829, 830–31 (B.I.A. 2012). Rangel advocates for a different approach: evaluating a child's age no later than the date the record closes.

Before we take up this issue, a word on the standard of review. We review challenges to the BIA's legal determinations de novo. *See Villegas-Castro v. Garland*, 19 F.4th 1241, 1244–45 (10th Cir. 2021). And with *Chevron* laid to rest, we follow the Supreme Court's charge to "exercise independent judgment" in interpreting the relevant statutory language. *Loper Bright*, 603 U.S. at 394.

Yet the BIA continues to argue that its interpretation of 8 U.S.C. § 1229b(b)(1)(D) is "entitled to latitude as a delegated exercise of agency discretion." Aplee. Supp. Br. 8. To be sure, Congress can delegate the power to interpret statutory commands to the executive branch—and when it does, courts must respect agency discretion. *See Loper Bright*, 603 U.S. at 394–95. But a delegation must come from somewhere. And 8 U.S.C. § 1229b, itself, does not "empower" the BIA to elucidate "'the details' of [the cancellation-of-removal] scheme."[3] *Id.* at 395 (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825)). So instead, the BIA points to the

---

[3] We suggested otherwise in *Martinez-Perez*, stating that 8 U.S.C. § 1229b(b)(1)(D) is ambiguous and "ambiguities in statutes within an agency's jurisdiction to administer are *delegations of authority* to the agency to fill the statutory gap." *Martinez-Perez*, 947 F.3d at 1280 (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005)). But that line of reasoning does not survive *Loper Bright*, which held that "an ambiguity is simply not a delegation of law-interpreting power." 603 U.S. at 399 (cleaned up) (quoting Cass R. Sunstein, *Interpreting Statutes in the Regulatory State*, 103 Harv. L. Rev. 405, 445 (1989)).

general rulemaking authority codified in 8 U.S.C. § 1103(g)(2) as the source of its discretion. But that provision does not refer to 8 U.S.C. § 1229b or otherwise indicate the BIA can interpret any of its terms or fill in any of its blanks. *See* 8 U.S.C. § 1103(g)(2). And overlooking that deficit would render *Loper Bright* essentially toothless. We thus see no basis for treating the BIA's 8 U.S.C. § 1229b interpretation as an exercise of delegated authority.[4] *See Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420–22 (6th Cir. 2024) (concluding "that the BIA has no discretion to define [the § 1229b(b)(1)(D)] standard").

Back to 8 U.S.C. § 1229b. At the outset, the BIA reminds us that *Loper Bright* left undisturbed "prior cases that relied on the *Chevron* framework." 603 U.S. at 412. The BIA thus posits that we are bound by *Martinez-Perez*'s "settled statutory construction of [8 U.S.C. §] 1229b(b)(1)(D)" that "provided the Attorney General with the interpretive flexibility to" determine when to assess a qualifying child's age.

---

[4] The BIA's other deference theories likewise fall short. The BIA suggests, for example, that its interpretations are "'largely immune from judicial inquiry or interference'" because the "political branches" maintain a critical role in regulating immigration. Aplee. Supp. Br. 10 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952)). But we have never recognized the type of "immunity" the BIA requests, as the federal courts' ample body of immigration precedent proves. And the only support the BIA cites for linking deference to political-branch regulation, *INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999), applied the now-defunct *Chevron* doctrine. Nor does *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), or *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519 (1978), control our analysis. *Skidmore* hardly puts a thumb on the scale by encouraging us to adopt agency interpretations that have the "power to persuade." 323 U.S. at 140. And *Vermont Yankee*'s insistence that courts respect agency procedures does not prevent us from deciding the substantive statutory requirements for immigration relief. *See* 435 U.S. at 543–45.

Aplee. Supp. Br. 7. The BIA's request ignores, however, that *Martinez-Perez* did not rule on the reasonableness of the BIA's 8 U.S.C. § 1229b(b)(1)(D) interpretation because in that case, the BIA had simply disclaimed its authority to interpret the statute in the first place. As such, no Tenth Circuit precedent constrains us from interpreting 8 U.S.C. § 1229b(b) anew.

Turning to that task, Rangel attacks the BIA's interpretation by focusing intently on one word in the cancellation-of-removal statute: establish. Because an applicant must "*establish*[] that removal would result in . . . hardship to" a qualifying relative, she says, immigration judges should assess a relative's qualifications when an applicant offers proof of them. 8 U.S.C. § 1229b(b)(1)(D) (emphasis added). She contends that her reading is consistent with dictionary definitions of "establish," which means "to convince someone of"[5] or "to demonstrate or prove to be true."[6] She also finds support in Congress's use of "establish" rather than other verbs that appear elsewhere in the statute ("has been" and "has not been"). 8 U.S.C. § 1229b(b)(1). Connecting those textual dots, Rangel urges us to fix a child's age no later than the date the record closes, when an applicant has submitted all her proof.

But we don't parse 8 U.S.C. § 1229b(b)(1) so finely. We read "establish[]" and every other word of 8 U.S.C. § 1229b(b)(1)(D) in the context of the statute as a whole. And as the Eleventh Circuit explained in denying a similar petition by an

---

[5] *Establish*, Black's Law Dictionary (12th ed. 2024).

[6] *Establish*, Oxford English Dictionary (2023), https://www.oed.com/dictionary/establish_v?tab=meaning_and_use&tl=true (last visited Sept. 4, 2025).

applicant whose child turned 21 while his case was pending before an immigration judge, the statute "directs immigration judges to examine the effect of the applicant's 'removal.'" *Diaz-Arellano v. U.S. Att'y Gen.*, 120 F.4th 722, 725 (11th Cir. 2024). Those effects are realized or averted when an immigration judge orders or cancels removal. So whether an applicant satisfies 8 U.S.C. § 1229b(b)(1)(D) naturally turns on the circumstances at the time of the immigration judge's decision. Of course, an immigration judge's understanding of those circumstances is informed by the record, which may be long closed by the time a decision is reached. But assessing a qualifying child's current age doesn't require new evidence. It just calls for common sense.[7] Like the BIA and the Eleventh Circuit, we hold that 8 U.S.C. § 1229b(b)(1)(D) contemplates assessing a qualifying child's age when the immigration judge issues a decision.[8] *See Diaz-Arellano*, 120 F.4th at 725–26.

We recognize that our interpretation forecloses cancellation for applicants who are eligible when they apply but not when their cases are decided. But we will not require an immigration judge to don blinders once the record closes and ignore evolving facts that are plainly relevant to an applicant's eligibility for relief. Indeed,

---

[7] For related reasons, we find Rangel's statutory-history argument unpersuasive. Yes, Congress changed the phrasing of the hardship requirement when it replaced suspension of deportation with cancellation of removal. *Compare* 8 U.S.C. § 1229b(b)(1), *with* Immigration and Nationality Act, Pub. L. No. 82-414, § 244(a)(1), 66 Stat. 163, 214 (1952). But the change from "is" to "establishes" is incidental. It doesn't alter our understanding of the hardship requirement or its significance to the statute as a whole.

[8] Because we resolve the ambiguity in 8 U.S.C. § 1229b(b)(1)(D) by reference to statutory context, we need not reach Rangel's lenity argument.

although our interpretation cuts against Rangel, it may favor other applicants. As the Eleventh Circuit recognized, "immigration judges may—in fact, must—consider" new evidence of hardship and new qualifying relatives that arise before a decision. *Id.* at 726.

Here, because Rangel's child was 22 years old when the immigration judge issued a decision in her case, she was not eligible for cancellation of removal. We thus deny the petition for review of her 8 U.S.C. § 1229b(b)(1) application.

## II.    Asylum

Rangel also challenges the BIA's dismissal of her asylum appeal. Under 8 U.S.C. § 1252(b)(4)(D), we may vacate an order denying an asylum application only if it is "manifestly contrary to the law and an abuse of discretion." Moreover, while we "may not uphold an agency action on grounds not relied on by the agency," this limitation does not apply where, on remand, governing law not relied upon by the BIA would mandate the same outcome and render remand futile. *Zapata-Chacon v. Garland*, 51 F.4th 1191, 1196 (10th Cir. 2022) (quoting *Mickeviciute v. INS*, 327 F.3d 1159, 1162–63 (10th Cir. 2003)).

To obtain asylum, a noncitizen must be "unable or unwilling to return to" their country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (defining "refugee"). This is known as the "nexus" requirement. *See Niang v. Gonzales*, 422 F.3d 1187, 1200 (10th Cir. 2005) ("For persecution to be 'on account of' membership in a social group, the

11

victim's protected characteristic must be central to the persecutor's decision to act against the victim." (quoting 8 U.S.C. § 1101(a)(42)(A))).

The immigration judge denied Rangel's asylum application, finding the application untimely and further concluding "the harm [Rangel] fears would [not] be perpetrated against her on account of a protected ground," specifically her status as a woman repatriated to Mexico from the United States. R. vol. 1, 54. The BIA, in turn, determined on appeal that Rangel "ha[d] not challenged the . . . adverse nexus finding" and deemed "th[i]s dispositive issue[] waived."[9] *Id.* at 6.

Before us, Rangel disputes this waiver ruling and argues that she adequately challenged the adverse nexus finding in the BIA proceedings. On this point, the only relevant BIA regulation provides that:

> The party taking the appeal must identify the reasons for the appeal in the [n]otice of [a]ppeal . . . or in any attachments thereto, in order to avoid summary dismissal . . . . The statement must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged. If a question of law is presented, supporting authority must be cited. If the dispute is over the findings of fact, the specific facts contested must be identified.

8 C.F.R. § 1003.3(b).

Rangel's notice of appeal satisfied this relatively low bar. In the addendum to her notice of appeal to the BIA, Rangel wrote that "[t]he [immigration judge] erred in finding that [she] did not establish eligibility for asylum . . . . [She] is a member of a particular social group and has a well-founded fear of future persecution on that basis

---

[9] The BIA accordingly did not reach or address Rangel's argument that her asylum application was timely.

if she returns to her home country." R. vol. 1, 45. The government briefly characterizes Rangel's notice of appeal as too conclusory and vague to preserve a nexus challenge, but we disagree with this passing suggestion. Rangel's statement clearly challenges the immigration judge's assessment that she lacked a well-founded fear of future persecution based on membership in a particular social group and therefore complies with 8 C.F.R. § 1003.3(b).

The government nevertheless argues that the BIA correctly found waiver because Rangel abandoned her nexus challenge by failing to advance such an argument in her brief to the BIA. Rangel's brief identified the specific findings of fact she was challenging when she faulted the immigration judge's omission of "any mention of her statement . . . that her female cousin, who had repatriated from the U.S.[,] was murdered." R. vol. 1, 22. Rangel also argued that "the immigration judge completely ignored the plethora of documentary evidence substantiating the gender violence in Mexico in determin[ing] . . . Rangel's particular social group." *Id.* at 23. To this end, Rangel also cited authority holding that "the BIA abuses its discretion when it fails to assess and consider evidence of increased persecution with regard to [a] claim of changed country conditions." *Id.* at 23 n.6.

The government argues that because Rangel did not use the words "motive" or "nexus" or the phrase "on account of," she exclusively challenged the immigration judge's refusal to delineate a particular social group, not its adverse nexus finding. According to the government, "cognizability of a particular social group[] and nexus are separate and distinct components of the asylum inquiry." Aplee. Br. 63. But in

this case Rangel sought to establish both elements through the same body of evidence. In denying Rangel's asylum application, the immigration judge found "that the harm she fears would [not] be perpetrated against her on account of a protected ground," specifically her status as a woman repatriated to Mexico from the United States. R. vol. 1, 54. In so doing, the immigration judge failed to mention Rangel's strongest evidence that she would in fact face persecution on that basis—the murder of her cousin, a woman repatriated to Mexico from the United States. And critically, for our purposes of evaluating the BIA's waiver conclusion, this is evidence that goes both to Rangel's asserted social group *and* the nexus between that social group and feared persecution.

In sum, after reviewing Rangel's notice of appeal and appellate brief to the BIA in conjunction with the immigration judge's opinion below, we conclude that Rangel adequately challenged the immigration judge's adverse nexus finding and that the BIA abused its discretion by failing to address the merits of her asylum appeal.[10]

---

[10] The dissent would reach the opposite conclusion. In so doing, it devotes significant attention to the merits of Rangel's asylum claim, which are irrelevant to the BIA's waiver ruling. Additionally, the dissent engages in a searching analysis of the proper waiver and preservation standards to be employed by the BIA, relying heavily on this court's own preservation doctrine, which is neither controlling nor invoked by the government. The dissent also repeatedly expresses concern about the BIA's workload, but we fail to see how abstract concerns about the BIA's heavy backlog of cases inform our legal conclusions in this case. Finally, we reject the dissent's reliance on *In re Valencia*, 19 I. & N. Dec. 354, 355 (B.I.A. 1986), to support its suggestion that the BIA has adopted an "as detailed as possible" preservation standard. Not only did neither party rely on *Valencia*, the dissent's suggested standard is an unworkable legal standard that would grant the BIA unfettered discretion to dismiss essentially any appeal for lack of preservation. Moreover, *Valencia* is readily distinguishable—the petitioner's single-sentence

While the BIA is not obligated to develop arguments for litigants, it may also not turn a blind eye to the arguments plainly before it.[11] Moreover, remand will not be futile in this case because there is no law requiring the BIA to affirm the immigration judge's determination that Rangel would not face persecution on account of being a woman repatriated from the United States or that her application was inexcusably untimely. *See Zapata-Chacon*, 51 F.4th at 1196.

---

notice of appeal was grammatically incoherent and not supplemented by any appellate briefing, and the BIA engaged in a full discussion of why that was insufficient to preserve any challenge. *Id.* at 354–56. Here, by contrast, Rangel filed a reasonably detailed notice of appeal, as well as a brief with additional argument, but the BIA ignored both in its conclusory waiver finding.

[11] Because we find that Rangel adequately challenged the immigration judge's adverse nexus finding in both her notice of appeal and her brief to the BIA, we need not decide whether an appellant who makes an argument in her notice of appeal but fails to address it in her appellate brief has waived that argument entirely. *Compare Hoxha v. Holder*, 559 F.3d 157, 161 (3d Cir. 2009) ("[T]here is no regulatory directive that clearly instructs an appellant that it must include in any brief filed with the BIA any issues initially identified in the notice of appeal."), *with Abebe v. Mukasey*, 554 F.3d 1203, 1207–08 (9th Cir. 2009) ("[P]etitioner didn't raise a withholding[-]of[-]removal claim in his brief before the BIA, and the BIA was therefore not required to consider it."), *and Claudio v. Holder*, 601 F.3d 316, 318–19 (5th Cir. 2010) (following *Abebe*). We also disagree that our precedent in *Garcia-Carbajal v. Holder*, 625 F.3d 1233 (10th Cir. 2010), controls the outcome of this issue. In *Garcia-Carbajal*, the petitioner introduced an entirely new legal theory on appeal that he had not previously presented to the BIA. *Id.* at 1236. Accordingly, we held that we lacked jurisdiction to entertain the argument because the petitioner did not exhaust it and thus did not give the BIA the opportunity to address it. *Id.* at 1236–38. To be sure, *Garcia-Carbajal* emphasizes the importance of presenting to the BIA all available arguments and legal theories. Here, however, Rangel's challenge to the BIA's waiver conclusion was not available to her prior to the BIA's ruling; she could not have possibly disputed the BIA's conclusion regarding waiver at any prior point in this litigation. We therefore do not face the exhaustion problem at issue in *Garcia-Carbajal*. And as for the general notion of presenting all available arguments and legal theories to the BIA, we are firmly convinced (as discussed above) that Rangel adequately presented her nexus challenge to the BIA. It is the BIA that erred in concluding otherwise.

**Conclusion**

Because 8 U.S.C. § 1229b(b)(1)(D) authorizes the immigration court to evaluate the age of an applicant's child at the time the immigration judge considers the application for cancellation of removal, Rangel's son (who was 22 years old at the time of the decision) was not a qualifying child under the statute. Therefore, the BIA properly found Rangel ineligible for cancellation of removal, and we deny Rangel's petition for review as to cancellation of removal. However, because Rangel did not waive her challenge to the immigration judge's denial of her asylum application, contrary to the BIA's ruling, we grant the petition in part and remand for the BIA to address the merits of Rangel's asylum appeal.

23-9511, *Rangel-Fuentes v. Bondi*

**HARTZ**, J., concurring in part and dissenting in part.

I am pleased to join the opinion of Judge Moritz except that I respectfully dissent from the remand to the BIA to address Rangel's asylum appeal. In my view, the BIA did not abuse its discretion in holding that Rangel had waived any challenge to the IJ's determination that she had not shown a nexus between her alleged membership in a particular social group and her alleged persecution.

Whether a party has waived an issue before an appellate tribunal is not an all-or-nothing proposition. Occasionally a party will say absolutely nothing about an issue in its brief to the tribunal. Much more often, at least in my experience on this court, the tribunal will say that the issue was waived because it was "inadequately" presented. It is not enough simply to state what the issue is. For example, briefs to this court must include a Statement of Issues. *See* Fed. R. App. P. 28(a)(5). But we have repeatedly said that an issue is not preserved on appeal simply because it is listed in the Statement of the Issues section of the brief. *See, e.g.*, *Blue Mountain Energy v. Dir., Off. of Workers' Comp. Programs*, 805 F.3d 1254, 1259 n.3 (10th Cir. 2015) ("It is well-settled in this Circuit that an issue listed, but not argued in the opening brief is waived." (internal quotation marks omitted)); *Cooper v. Cent. & Sw. Servs.*, 271 F.3d 1247, 1248 n.2 (10th Cir. 2001) ("In her statement of issues presented for review, plaintiff lists the issue of whether she timely filed her discrimination charge under the ADA. The issue is not further argued, however, and we deem it waived."); *Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1231 (10th Cir. 1990) ("Although plaintiff lists the liability of the City and the mayor as an

issue on appeal, he failed to argue this issue in his appellate brief or at oral argument. Therefore, we conclude that plaintiff has waived this issue."). What the appellant must do is develop an argument explaining why the party should prevail on the issue. And the "argument" cannot be perfunctory. *See In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019) ("We . . . do not address arguments raised in the District Court in a perfunctory and underdeveloped manner." (internal quotation marks omitted)). The length of the discussion is not dispositive. A paragraph without a reasoned argument addressing the relevant authority is still inadequate. *See Tele-Communications Inc. v. C.I.R.*, 104 F.3d 1229, 1233–34 (10th Cir. 1997); *see also Sheward v. City of Henryetta*, 810 Fed. Appx. 684, 689 (10th Cir. 2020) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal. . . . To advance a reasoned argument, an appellant must support his position with legal argument and authority." (internal quotation marks omitted)).

There is no bright-line rule to determine whether an issue has been adequately presented. To say that an issue has not been adequately presented is equivalent to saying that the party has not made enough of an argument to be entitled to a response. Reasonable people, weighing a variety of considerations, may differ on whether enough has been said. Accordingly, "whether an issue should be deemed waived is a matter of discretion." *United States v. Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019).

One note of caution. It is important to distinguish the question before the BIA (whether Rangel was entitled to review of the issue by the BIA) from the question

2

whether she is entitled to review of the issue by this court. To answer the second question, *we* must determine whether the petitioner has exhausted her remedies before the BIA, an issue that we deemed jurisdictional until the Supreme Court corrected us in *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). Thus, a circuit court could decide that a petitioner satisfied the exhaustion requirement but the BIA's summary dismissal for failure to adequately present the issue was appropriate. *See Atehehortua-Vanegas v. I.N.S.*, 876 F.2d 238, 240–41 (1st Cir. 1989).

There is nothing inappropriate about different tribunals having different standards for determining when presentation of an issue has been adequate. One important factor may be the court's workload. A court with a light load may think it useful to provide legal guidance by preparing an opinion explaining why a claim has no merit, while a court with a horrendous caseload (such as the BIA) may determine that justice is best served if it devotes its limited resources to responding to only reasoned arguments.[1] Its

---

[1] As the Ninth Circuit explained when the BIA's caseload was significantly lower than now:

> The purpose of the BIA's strict specificity requirement is to ensure that the BIA is adequately apprised of the issues on appeal so that the BIA is not left to search through the record and speculate on what possible errors the petitioner claims. If the BIA was forced to decipher general statements of error, unsupported by specific factual or legal references, the BIA would have to spend time and resources reconstructing the proceedings before the IJ and building the petitioner's legal case, in some instances only to conclude that the appeal was utterly without merit. But when the BIA receives ample specific advice about the reasons for an appeal, the BIA can deal promptly with appeals and focus resources on nonfrivolous appeals to reach a correct resolution.

main incentive for including an explanation in its opinion may be just to facilitate judicial review.

On what basis, then, do we determine whether the BIA has abused its discretion in deciding that an issue has been waived? Do we think the BIA gave inadequate attention to the issue? Or did not adequately explain its reasoning? That cannot be the standard. We presume that the BIA performed its duty, *see Wilson v. Hodel*, 758 F.2d 1369, 1372 (10th Cir. 1985) (we presume that an agency properly discharged its official duties "absent clear evidence to the contrary"); and to impose a duty of explanation would be in tension with our endorsement of the BIA's practice of regularly issuing one-judge opinions affirming the immigration judge without opinion, *see Yuk v. Ashcroft*, 355 F.3d 1222, 1228– 32 (10th Cir. 2004).

What the majority opinion appears to be saying is that the BIA failed to comply with its own regulations for determining waiver. It points to 8 CFR § 1003.3(b), which states:

> The party taking the appeal must identify the reasons for the appeal in the Notice of Appeal (Form EOIR–26 or Form EOIR–29) or in any attachments thereto, in order to avoid summary dismissal pursuant to § 1003.1(d)(2)(i). The statement must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged. If a question of law is presented, supporting authority must be cited. If the dispute is over the findings of fact, the specific facts contested must be identified. Where the appeal concerns discretionary relief, the appellant must state whether the alleged error relates to statutory grounds of eligibility or to the exercise of discretion and must identify the specific factual and legal finding or findings that are being challenged.

*Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 820 (9th Cir. 2003) (brackets, citations, and internal quotation marks omitted).

It appears to think that this standard is more congenial for appellants than is this court's standard for judicial appellate review. Perhaps the rule could be so construed, but that has not been the BIA's construction of the rule for more than half a century. In *Matter of Holguin*, 13 I. & N. Dec. 423 (BIA 1969), the Board construed the predecessor to the present rule (then codified at 8 CFR § 3.1(d)(1–a)), which contained essentially the same operative language as the present rule—namely, that the BIA could summarily dismiss the appeal if "the party concerned fails to specify the reasons for his appeal." It dismissed the appeal in that case, saying, "[G]eneralized statements of the reasons for these appeals, as set forth in the respective notices of appeal, are totally inadequate. *They do not tell us what aspect of the special inquiry officer's order they consider incorrect and for what reason.*" *Id.* at 425 (emphasis added)). *Accord Reyes-Mendoza v. I.N.S.*, 774 F.2d 1364, 1365 (9th Cir. 1985) (in affirming BIA summary dismissal of appeal, the court stated *Holguin* standard that petitioner must "inform the BIA of what aspects of the IJ's decision were allegedly incorrect and why").

Two decades later the BIA construed this regulation as "designed to permit us to deal promptly with appeals where the reasons given for the appeal are inadequate to apprise the Board of the particular basis for the alien's claim that the immigration judge's decision is wrong." *Matter of Valencia*, 19 I. & N. Dec. 354, 355 (BIA 1986).  It expanded on the meaning of the rule as follows:

> It is essential to the Board's adjudication of an appeal that the reasons given on the Notice of Appeal be *as detailed as possible* so that the alleged error can be identified and addressed. Without a specific statement, the Board can only guess at how the alien disagrees with the immigration judge's decision.

5

It is therefore insufficient to merely assert that the immigration judge improperly found that deportability had been established or denied an application for relief from deportation. Where eligibility for discretionary relief is at issue, it should be stated whether the error relates to grounds of statutory eligibility or to the exercise of discretion. *Furthermore, it should be clear whether the alleged impropriety in the decision lies with the immigration judge's interpretation of the facts or his application of legal standards. Where a question of law is presented, supporting authority should be included, and where the dispute is on the facts, there should be a discussion of the particular details contested.*

Although the regulations only refer to the reasons that must be stated on the Notice of Appeal, the contentions made by an alien on appeal are of course best presented in a brief setting forth his arguments. Depending on the complexity of the issues raised, a brief may be essential to an adequate presentation of the appeal. In all cases, however, the reasons for an appeal must be meaningfully identified on the Notice of Appeal.

*Id.* at 355 (citation omitted, emphasis added). If anything, the *Valencia* standard seems tougher than the waiver standard in our court. For one thing, we do not require an appellant's statement of reasons for the appeal to be "as detailed as possible." *Matter of Valencia*, 19 I. & N. Dec. at 355.

In light of this standard, I do not see any abuse of discretion by the BIA in the dismissal at issue here. The BIA ruled that Rangel did not challenge the IJ's determination that she had not established the nexus between her alleged protected group and the alleged future persecution. To properly assess whether that ruling was an abuse of discretion, it is necessary to put Rangel's appeal to the BIA in context. I therefore begin with an examination of the evidence presented on nexus by Rangel and the law governing nexus.

Rangel's application for asylum as a refugee was predicated on her assertion that she had a well-founded fear that if she returned to Mexico she would be persecuted

6

because of her membership in a particular social group—namely, women who had been repatriated to Mexico from the United States. *See* 8 U.S.C. § 1101(a)(42)(A) (defining "refugee" to include an individual who has "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion"). The IJ rejected the claim, finding that she had not presented sufficient evidence to sustain her application.

As purported support for this claim, Rangel had presented general information about violence against women in Mexico; a letter from an official in her hometown in Mexico stating that she and her family would be at high risk if they returned to the town; and a statement in her I-589 that a cousin of hers, a woman who had been repatriated to Mexico from the United States, had been murdered in Mexico. That evidence is wholly inadequate. I address each item.

To begin with, Rangel does not suggest that the general information concerning the threat to women living in Mexico would suffice to justify asylum for all women in Mexico. Presumably, that is why she did not describe her particular social group as "women from Mexico." In *Niang v. Gonzales*, 422 F.3d 1187 (10th Cir. 2005), the petitioner's asserted particular social group was females from her native country who belonged to a particular tribe; the relevance of the tribe was that it practiced female genital mutilation. *See id.* at 1198, 1201. In discussing the petitioner's particular social group, we said that a country's women could constitute a proper social group but then the question would be "whether the members of that group are sufficiently likely to be persecuted that one could say that they are persecuted 'on account of' their membership.

7

It may well be that only certain women—say, those who protest inequities—suffer harm severe enough to be considered persecution. The issue then becomes whether the protesting women constitute a social group." *Id.* at 1999–1200 (citation omitted). Given that Rangel chose her particular social group to be "women repatriated to Mexico from the United States," she therefore needed to produce evidence that those specific women were targeted for persecution.

The letter from her hometown official does not help Rangel in that regard. I quote the translated letter in full in a footnote.[2] The letter is inadequate on its face because, at most, it suggests danger to her only in her hometown, not throughout Mexico. *See* 8 C.F.R. § 208.13(b)(3)(i) ("In cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecution is by a government or is government-sponsored."); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005). It is also deficient because it does not indicate what specific dangers she would face in her hometown, so one could not tell whether they would rise to the level of persecution.

---

[2]     To Whom It May Concern:

The Undersigned C. Reyes Felipe Mendoza Perez, Municipal President of Ignacio Zragoza [sic], declares the C. Cristina Rangel Fuentes, 38 years old, whose date of birth is the 1st day of September of 1974, who is originally from the municipality of Ignacio Zaragoza, Chih[uahua], fears return to her municipality since there is a high rate of insecurity/safety index that is directly affects her and poses a risk to her family, whose known address is [redacted].

R. at 207.

In any event, Rangel (quite understandably) never asserted in the administrative proceedings that the letter is saying that the risk to her (and her family) in her hometown would arise specifically because she would be a repatriated woman. Her only reference to the letter in her brief to the BIA cites it only as part of "the plethora of documentary evidence substantiating the gender violence in Mexico in determination of Ms. Rangel's particular social group." R. at 23.

There remains only Rangel's statement that her female cousin, who had lived in the United States, was murdered in Mexico. This murder could be one example of the murder of a woman repatriated to Mexico from the United States. One example, however, ordinarily could not suffice to support a reasonable fear of persecution. And, more importantly, Rangel provided absolutely no evidence indicating the motive for her cousin's murder. Perhaps the motive was because she was a repatriated woman, but for all we know, the perpetrators did not even know that she had lived in the United States.

One of the reasons the IJ rejected Rangel's asylum claim was that "the Record indicates that the harm [she] fears in Mexico would . . . not [be] on account of [her] membership in any of her proposed social groups." R. at 55. If the BIA had affirmed the IJ's decision that Rangel had failed to provide sufficient evidence to support her asylum claim, we would certainly have denied a petition for review of that decision. In legalese, she had utterly failed to satisfy her burden to prove a *nexus* between persecution and membership in her particular social group. That is, she failed to prove that there were people in Mexico who would persecute her specifically because she would be a woman repatriated to Mexico from the United States.

9

So why did the BIA not address the merits? The reason it gave was that Rangel "ha[d] not challenged the [IJ's] adverse nexus finding. . . . Accordingly, we deem [this] dispositive issue[] waived." A.R. 6. Neither Rangel's notice of appeal nor her brief to the BIA explained why the IJ had erred in finding no nexus. There was thus no abuse of discretion by the BIA in dismissing the appeal. *See Nazakat v. I.N.S.*, 981 F.2d 1146, 1148 (10th Cir. 1992) (decision by BIA to dismiss appeal is reviewed for abuse of discretion).

In support of the proposition that Rangel adequately challenged the adverse nexus finding in the BIA proceedings, the majority opinion first quotes from the addendum to her notice of appeal to the BIA the statement that "the immigration judge erred in finding that she did not establish eligibility for asylum. She is a member of a particular social group and has a well-founded fear of future persecution on that basis if she returns to her home country." Maj. Op. at 12–13 (brackets, ellipses, and internal quotation marks omitted). This is hardly an argument. It is a bare assertion. It is essentially a statement of the issue, which would never preserve an argument in our court. This court has said, "The first task of an appellant is to explain to us why the district court's decision was wrong." *Nixon v. City and Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). Failure to perform that task waives the issue. *See id.* at 1368. Rangel's addendum provides zero explanation of why the IJ decision was wrong. It does not come close to satisfying the BIA's requirement that "the reasons given on the Notice of Appeal be *as detailed as possible* so that the alleged error can be identified and addressed." *Matter of Valencia,* 19 I. & N. Dec. at 355. It was eminently reasonable for the BIA to determine that the

10

addendum did "not tell us what aspect of the [IJ's] order [she] consider[ed] incorrect *and for what reason*." *Matter of Holguin*, 13 I. & N. Dec. at 425 (emphasis added).

The majority opinion also refers to Rangel's statements in her brief to the BIA that "faulted the immigration judge's omission of any mention of her statement that her female cousin, who had repatriated from the U.S., was murdered," that "argued that the immigration judge completely ignored the plethora of documentary evidence substantiating the gender violence in Mexico in determining Rangel's particular social group," and that "cited authority holding that the BIA abuses its discretion when it fails to assess and consider evidence of increased persecution with regard to a claim of changed country conditions." Maj. Op. at 13 (ellipses, brackets, and internal quotation marks omitted). But recitation of evidence (of gender violence in Mexico and of the murder of her cousin) does not preserve an issue absent an argument explaining how the evidence rebuts the IJ decision. *See Rieck v. Jensen*, 651 F.3d 1188, 1191 n.1 (10th Cir. 2011) ("[A]n argument is not preserved by merely alluding to it in the statement of facts."); *Bhandari v. Garland*, 2021 WL 4704661 at *2 (10th Cir. Oct. 8, 2021) ("[A] party does not preserve an issue in an appellate brief by simply mentioning a factual predicate for the issue; the issue itself must be addressed and fully developed.").

And there was no such argument in the brief. Nor was this evidence that supported a nexus argument. The evidence of persecution of women in Mexico was not specific to Rangel's proffered social group (women who had repatriated to Mexico), and there was no evidence that her cousin (the only member of the proffered social group identified by Rangel) was murdered *because of* her membership in that group. It is this causal

11

connection that is referred to as the *nexus* requirement. The most important thing, though, is that Rangel's pleadings to the BIA include *absolutely no argument or even an assertion* that the referred-to evidence was sufficient to establish that nexus. The BIA was perfectly correct to say that Rangel "has not challenged the Immigration Judge's adverse nexus finding." R. at 6.

My view of the BIA's authority to dismiss appeals is not an outlier. This issue has not come before the circuit courts very often, but several opinions have held that a petitioner is not entitled to a merits review by the BIA (or the circuit court) if the petitioner does not present an explanation of why the IJ decision was improper. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 820–21 (9th Cir. 2003) (affirming BIA's summary dismissal of petitioner's claim because "Rojas–Garcia did not indicate if his challenges were based on the IJ's interpretation of facts, and did not provide 'supporting authority' on any question of law presented"); *Bayro v. Reno*, 142 F.3d 1377, 1379 (11th Cir. 1988) ("[W]hen a petitioner fails to apprise the Board of the specific grounds for his appeal, whether by specifying the reasons in the notice of appeal *or* by submitting an additional statement or brief, summary dismissal is appropriate.") (internal quotation marks omitted); *Toquero v. I.N.S.*, 956 F.2d 193, 195 (9th Cir. 1992) ("[T]he Notice of Appeal must inform the BIA of what aspects of the IJ's decision were allegedly incorrect and why." (internal quotation marks omitted)); *id.* ("Rather than describing *how* the evidence established extreme hardship and *why* the IJ erred, Petitioner makes a generalized and conclusory statement about the proceedings before the IJ."); *id.* at 196 ("While the Notice correctly focused on the issue in contention, it did not indicate which

facts were in contention and how the IJ misinterpreted the evidence."); *Atehortua-Vanegas*, 876 F.2d at 241 ("At the very least, a grievant must tell the Board what aspects of the IJ's decision he contends were wrong, and why. And, this must be done in a meaningful, intelligible way. A reviewing tribunal ought not to be forced into a needless search for an evanescent needle in a legal haystack merely because an appellant, whether for tactical reasons or out of sheer indolence, neglects to shed light upon the grounds." (citations omitted)); *Townsend v. I.N.S.*, 799 F.2d 179, 181 (5th Cir. 1986) (affirming summary dismissal by BIA when appellant's statement of reasons for appeal was that he had "sufficiently established his well-founded fear of persecution according to present caselaw" (internal quotation marks omitted)); *see also Rizo v. Lynch*, 810 F.3d 688, 692 (9th Cir. 2016) (dismissal of petition for review for failure to exhaust before the BIA because the "conclusory statement [in the brief to the BIA] does not apprise the BIA of the particular basis for Rizo's claim that the IJ erred; it merely asserts that the IJ erred. Such a submission does not meaningfully challenge the IJ's decision on appeal."); *Grigorian v. Gonzales*, 231 F. App'x 828, 830 (10th Cir. 2007) ("[I]n both his notice of appeal to the BIA and his supporting brief, which were filed by counsel, Mr. Grigorian made only broad, conclusory assertions of error in the IJ's future-persecution findings that were unsupported by any discussion of the pertinent facts. Consequently, he failed to exhaust his administrative remedies as to that issue and we lack jurisdiction over it."); *cf. Casas-Chavez v. I.N.S.*, 300 F.3d 1088, 1091 (9th Cir. 2002) (notice of appeal was sufficient to avoid dismissal by BIA when it "directed the BIA's attention to specific portions of the immigration judge's opinion as well as to evidence supporting

[petitioners'] interpretation that the immigration judge erred in not suspending deportation proceedings . . . [and their] articulated interpretation was also supported by authority").

This case should be put to bed. Remand is a gross waste of time for an agency that can ill afford such impositions. But what is more troublesome is the additional unnecessary workload imposed on the BIA in dealing with its entire caseload. Will it hesitate to dismiss appeals or possible issues on appeal for fear that a court of appeals might delay removal for several years by ordering the BIA to address the merits?

I therefore must respectfully dissent on this issue.